**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Michael Villagran | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:04-cv-03421 |
| | ) | |
| Kenneth Ramsey, Sherriff of Kane County; et al. | ) | Judge Hon. David H. Coar |
| | ) | |
| | ) | Magistrate Hon. Jeffrey Cole |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANTS' JOINT STATEMENT OF FACTS AND STATEMENT OF ADDITIONAL MATERIALS FACTS**

Plaintiff MICHAEL VILLAGRAN ("Villagran") by and through his attorneys, LORD, BISSELL & BROOK, LLP, hereby submits the following response to Defendants' Joint Statement of Uncontested Facts, and submits the following additional material facts that require denial of summary judgment:

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT**

1. Plaintiff brought this action pursuant to 42 USC § 1983 and therefore jurisdiction is proper pursuant to 28 USC § 1331.

**Response:** Agreed

2. The claims asserted allegedly took place in Kane County, Illinois, which is in the Northern District of Illinois and venue is therefore proper under 28 USC § 1391(b).

**Response:** Agreed

3. Plaintiff was a pre-trial detainee at the Kane County Jail from August 18, 2003, until October 24, 2004. when [sic] he was transferred to the Illinois Department of Corrections.

**Response:** Agreed

4. At various times while plaintiff was a pre-trial detainee in the Kane County Jail defendants Cestone, Eller, Knepper, Eller [sic], Peach and Villamil were nurses employed by Wexford providing care at the Kane County Jail.

**Response:** Agreed

5. At all relevant times defendant Dr. Aguinaldo was employed by Wexford and provided medical care at the Kane County Jail.

**Response:** Agreed

6. Wexford Health Sources, Inc., had a contract to provide health services at the Kane County Jail from June 16, 2003 through May of 2006.

**Response:** Agreed

7. At the time when Villagran was a pre-trial detainee at the Kane County Jail, Ramsey was the duly elected Sheriff of Kane County, Illinois.

**Response:** Agreed

8. (misnumbered as paragraph 4)[1] On August 18, 2003, plaintiff was a pre-trial detainee at the Kane County Jail.

**Response:** Agreed

9. (misnumbered as paragraph 5) At plaintiff's deposition he testified that on October of 2003 he first started having a rash on his left calf.

**Response:** Agreed

10. (misnumbered as paragraph 6) Plaintiff further testified he saw a nurse in November of 2003 and was seen by a doctor a few days later.

**Response:** Agreed

---

[1] Paragraphs 8 through 16 of defendants' Joint Statement of Uncontested Facts are misnumbered as paragraphs 4-12.

11. (misnumbered as paragraph 7) He also testified that the doctor examined him and provided him with some topical cream.

**Response:** Agreed.

12. (misnumbered as paragraph 8) Plaintiff testified that he continued to see the doctor at the Kane County Jail for the rash and continued to receive a topical cream to apply to the affected areas up through April or May of 2004.

**Response:** Contested. Villagran continued to receive medical treatment from Dr. Aguinaldo and other medical providers at the Kane County Jail until October 2004. (Exhibit A–Kane County Jail Medical Progress Notes[2]; Exhibit B–Peach Deposition, pg. 29, line 15-pg. 30, line 2; Exhibit C–Villamil Deposition, pg. 68, line 24-pg. 69, line 16.)

13. (misnumbered as paragraph 9) Plaintiff testified that during time the rash would get better and sometimes it would get worse.

**Response:** Agreed.

14. (misnumbered as paragraph 10) Plaintiff testified that he saw the medical personnel at Kane County every couple days or every week or two weeks.

**Response:** Contested. The cited testimony relates only to a limited and specified period of time. Villagran's testimony regarding the frequency of his treatment is described throughout his deposition. (Exhibit D–Villagran Deposition).

15. (misnumbered as paragraph 11) While in the Kane County Jail plaintiff testified that he was told he had a rash.

**Response:** Contested. In addition to testifying that he was told he had a rash, Villagran also testified that he was told by a doctor and a nurse that

---

[2] Defendants produced the medical progress notes in discovery and stipulated that the notes were made and kept by defendants in the ordinary course of business during the deposition of defendant Lillian Villamil. (Ex. C, pg. 25, line 11-pg. 26, line 4). Defendant Villamil also testified that the medical progress notes were made by an individual with knowledge of the facts reported therein at the time the facts were observed by the individual. (Ex. C, pg. 27, line 14-pg. 28, line 15). Thus, the medical progress notes are admissible as business records pursuant to Fed. R. Evid. 803(6).

he suffered from a bacterial infection known as Cellulitis. (Ex. D, pg. 38, line 23-pg. 39, line 6).

16. (misnumbered as paragraph 12) Between June 16, 2003 and May of 2006, other than this suit, there were no other lawsuits or formal complaints concerning the medical care provided at the Kane County Jail.

**Response:** Contested. On December 4, 2003, Lamont Thomas filed a claim under 42 U.S.C. §1983 in this Court, case no. 02 C 5179, alleging that he developed a leg rash while an inmate in Kane County, and alleging that "Thomas requested medical attention for this skin rash, but his requests were ignored." (Exhibit E–Thomas Complaint, ¶¶19-20).

## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

1. When Villagran entered the Kane County Jail, he did not have any type of skin rash or infection. (Ex. C, pg. 20, line 10-pg. 27, line 8; Ex. D, pg. 6, lines 4-13; Exhibit F–Inmate Screening Form).

2. Villagran first complained of a rash on his left leg on or about September 3 or September 4, 2003. (Ex. A, 9/4/03 entry; Exhibit G–Medical Request Form).

3. On September 4, 2003, Kane County medical personnel observed that Villagran's left leg contained lesions with "purulent drainage", and that Villagran's skin integrity was impaired. (Ex. A, 9/4/03 entry). Purulent drainage means that green fluid was leaking out of a lesion on Villagran's left leg. (Ex. C, pg. 31, lines 1-8).

4. Villagran's injury was observed by defendant Aguinaldo the next day, on September 5, 2003. (Ex. A, 9/5/03 entry).

5. At the time Villagran was first seen by Kane County medical personnel[3], the rash was on his left calf, was larger than a half dollar, contained pus, and was bumpy, reddish, bleeding, and irritating. (Ex. D, pg. 10, line 22-pg. 11, line 8).

6. Dr. Aguinaldo treated Villagran's leg injury by applying a topical cream and bandage, but provided no other medication or treatment of any kind. (Ex. D, pg. 10, lines 14-21).

7. Villagran saw Dr. Aguinaldo again one week later, at which time Villagran's leg injury was in worse condition than during the first visit. (Ex. D, pg. 12, lines 17-21).

8. At that time, Dr. Aguinaldo applied the same topical cream to Villagran's leg, but applied no bandage, and provided no other treatment or medication. (Ex. D, pg. 12, line 22-pg. 13, line 4).

9. Villagran saw Dr. Aguinaldo on several more occasions between that second visit and the end of 2003. During this time, the injury on Villagran's left leg continued to get worse. (Ex. D, pg. 14, line 16-pg. 20, line 10).

10. When Villagran saw Dr. Aguinaldo in late December, 2003, Villagran's leg injury had become infected and was beginning to spread. The injury was oozing pus, itching, cramping, and causing Villagran considerable pain. (Ex. D, pg. 20, lines 11-14).

11. Dr. Aguinaldo continued to provide the same topical cream to treat Villagran's leg injury throughout 2003, and provided no other medication or treatment. (Ex. D, pg. 14, line 16-pg. 20, line 24).

---

[3] Contrary to the medical records, Villagran testified that he first complained about his rash in October 2003, and was first seen by Kane County medical personnel in November 2003. (Ex. D, pg. 6, line 23–pg. 9, line 1). This is an issue of fact to be resolved at trial.

12. Villagran continued to see Dr. Aguinaldo in January and February 2004 for the leg injury, and Aguinaldo continued to provide only the same topical treatment for the injury. (Ex. D, pg. 21, line 1-pg. 23, line 3).

13. Defendants Cestone and Peach saw Villagran in February 2004 and noted that his leg injury was discharging a brown fluid, and that Villagran was complaining of pain. (Ex. A, 2/26/04 and 2/27/04 entries; Ex. B, pg. 15, line 10-pg. 18, line 4; Exhibit H–Deposition of Eileen Cestone, pg. 17, lines 15-22).

14. Villagran's leg injury persisted into March 2004, at which time Villagran was temporarily transferred to the McHenry County Jail. (Ex. D, pg. 23, lines 4-9).

15. Shortly after he was transferred to McHenry County, Villagran was taken to Centegra Hospital in Woodstock to treat his leg injury. (Ex. D, pg. 23, lines 14-16; Ex. I–Centegra Medical Records).[4]

16. Medical personnel at Centegra noted that Villagran's left calf was tender, swollen, red, contained weeping pustules, and was emitting a yellow drainage. (Ex. I, pgs. 6, 10). Villagran complained that the injury was itchy, burning, and produced pain that rated 6 on a scale of 1 to 10. (Ex. I, pgs. 6, 10).

17. Medical personnel at Centegra diagnosed Villagran as having a skin and tissue infection in his left calf called Cellulitis. (Ex. I, pgs. 10-11).

18. Medical personnel at Centegra treated Villagran's Cellulitis by administering Rocephin intravenously, and by prescribing Keflex and Valtrex. (Ex. I, pgs. 8, 11; Ex. D, pg. 24, lines 1-24).

[4] The Centegra Medical Records were produced with a certification indicating that the records were made and kept in the ordinary course of business, and they are admissible as business records pursuant to Fed. R. Evid. 803(6) and 902(11). Page numbers have been added to the records for ease of reference.

19. The treatment provided by Centegra improved the Cellulitis somewhat. (Ex. D, pg. 25, lines 2-3).

20. Villagran returned to Kane County on or about March 30, 2004. At that time, the Kane County medical personnel were made aware that Villagran had been diagnosed with Cellulitis while in McHenry County. (Ex. A, 3/30/04 entry; Exhibit J–Bonnie Eller Deposition, pgs. 17-18).

21. Cellulitis has the potential to become a serious medical condition, and if left untreated or if treated improperly, Cellulitis could lead to death. (Ex. C, pgs. 50, line 6-pg. 51, line 8; Ex. H, pg. 15, lines 6-23; Ex. J. pg. 15, lines 13-15).

22. When Villagran returned to Kane County, his infection had spread to his right calf, the backs of both ears, and on both hips. (Ex. D, pg. 26, lines 10-14; pg. 27, lines 3-5).

23. When Villagran returned to Kane County, he was placed in the infirmary because his condition was considered serious enough to warrant closer medical monitoring. (Ex. A, 3/30/04 entry; Ex. C, pg. 46, line 2-pg. 50, line 5).

24. When Villagran returned to Kane County, he was again given the topical cream that he had been previously given, but was not given any other medications or treatments for his Cellulitis. (Ex. D, pgs. 18-23).

25. Villagran's Cellulitis continued to manifest itself in April and May 2004 with symptoms such as pustules, swelling, and drainage of green, "purulent," fluid. Defendants repeatedly noted that Villagran's Cellulitis had led to "impaired skin integrity" during this time. (Ex. A, entries from 3/31/04 to 5/25/04; Ex. B, pg. 18, line 5-pg. 24, line 7; Ex. C, pg. 54, line 24-pg. 55, line 24, pg. 60, line 1-pg. 63, line 1; Ex. H., pg. 18, line 21 - pg. 21, line 16; Ex. J, pg. 19, lines 11-16).

26. Throughout April and May 2004, Villagran continued to receive only the same topical cream that he had previously received, and received no other treatment. (Ex. D, pg. 27, line 15-pg. 28, line 4).

27. Villagran asked a nurse in Kane County to see a dermatologist for his Cellulitis in April or May 2004, but was told by that nurse that Kane County could not afford to send him to a dermatologist for insurance reasons. (Ex. D, pg. 27, lines 6-19, pg. 28, line 21-pg. 29, line 17).

28. When Villagran asked defendant Knepper to see a dermatologist on June 6, 2004, she thought the request was reasonable enough to pass along to Dr. Aguinaldo. (Exhibit K–Marlys Knepper Deposition, pg. 20, line 2-pg. 27, line 19).

29. Villagran asked Kane County medical personnel, including one or more of the defendants, to see a dermatologist to treat his Cellulitis multiple times from April to October 2004. (Ex. L–Affidavit of Michael Villagran, ¶2).

30. Villagran was never permitted to see a dermatologist while he was in the Kane County Jail. (Ex. L, ¶3).

31. Villagran was never sent to a dermatologist because the Kane County medical facility had a policy against referring non-emergency conditions to an outside medical provider, even for chronic conditions. (Ex. K, pg. 10, line 13-pg. 12, line 1).

32. Villagran's Cellulitis continued from June 2004 until he left Kane County on or about October 24, 2004. The Cellulitis continued to manifest as a rash on Villagran's left calf during that entire time. (Ex. D, pg. 30, line 20-pg. 31, line 5).

33. From June 2004 to October 2004, defendants made multiple and repeated notations in the medical progress notes of the symptoms of Villagran's Cellulitis, including redness, inflammation, open wounds, "impaired" or "altered" skin integrity, complaints of pain,

blistering, spreading of the rash to Villagran's right hip, swelling, and tenderness. (Ex. A, 6/2/04 to 10/25/04 entries; Ex. B, pg. 24, line 8-pg. 26, line 24; Ex. C, pg. 68, line 6-pg. 70, line 1; Ex. H, pg. 24, line 9-pg. 30, line 24; Ex. J, pg. 27, line 1-pg. 28, line 16; Ex. K, pg. 20, line 2-pg. 33, line 19).

34. From June to October 2004, the only treatment that Villagran received for his Cellulitis continued to be the same topical cream that he had previously received, and he received no other treatment. (Ex. D, pg. 31, lines 9-14).

35. The rash on Villagran's left leg continued from September or October 2003 until Villagran left Kane County Jail on or about October 24, 2004. (Ex. L, ¶4).

36. From October 2003 to October 2004, although Villagran's rash would sometimes improve and sometimes get worse, Villagran's rash frequently and repeatedly exhibited swelling, redness, weeping pustules, open wounds, bleeding, and frequently and repeatedly caused Villagran significant pain and discomfort. (Ex. L, ¶5).

37. From October 2003 to October 2004, Villagran frequently and repeatedly told each of the defendants that the rash on his left calf was causing him significant pain and discomfort. (Ex. L, ¶6).

38. During the entire time that Villagran was in Kane County, he never received any treatment for his Cellulitis other than the same topical cream. (Ex. D, pg. 34, lines 17-23).

39. During the entire time that Villagran was in Kane County, he was always compliant with the instructions of the Kane County medical personnel (including defendants), and never refused medical treatment from Kane County medical personnel (including defendants). (Ex. L. ¶7).

40. Dr. Aguinaldo was ultimately responsible for prescribing Villagran's course of treatment. (Ex. H, pg. 47, line 12-pg. 48, line 8; Ex. J, pg. 22, line 14-pg. 23, line 19; Ex. K, pg. 10, lines 23-24).

Respectfully Submitted,

/s/ Mark A. Bradford

P. Russell Perdew
Mark A. Bradford
Lord Bissell & Brook LLP
Attorneys for Defendant

Lord, Bissell & Brook LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0700

**CERTIFICATE OF SERVICE**

I, Mark A. Bradford, an attorney, hereby certify that I caused the foregoing Plaintiff's Motion for Leave to File a Second Amended Complaint to be filed with the Court's CM/ECF system on this 13th day of February, 2007, and thereby electronically served on the following:

Rick Tjepkema, Esq.
Charysh & Schroeder, Ltd.
33 North Dearborn Street, Suite 1300
Chicago, Illinois 60602

Joseph Lulves
Kane County State's Attorney
100 South Third Street, 4th Floor
Geneva, Illinois 60134

/s/ Mark A. Bradford
Mark A. Bradford